[No. C049642. Third Dist. Dec. 8, 2006.]

CITIZENS TO SAVE CALIFORNIA et al., Plaintiffs and Respondents, v. CALIFORNIA FAIR POLITICAL PRACTICES COMMISSION, Defendant and Appellant;
ARNOLD SCHWARZENEGGER et al., Interveners and Respondents.

COUNSEL

Bill Lockyer, Attorney General, Louis R. Mauro, Assistant Attorney General, Christopher E. Krueger and Douglas J. Woods, Deputy Attorneys General; Luisa Menchaca and Lawrence T. Woodlock for Defendant and Appellant.

Paul S. Ryan and J. Gerald Hebert for The Campaign Legal Center, Inc., as Amicus Curiae on behalf of Defendant and Appellant.

Nielsen, Merksamer, Parrinello, Mueller & Naylor, James R. Parrinello and Christopher E. Skinnell for Plaintiffs and Respondents.

Bell, McAndrews & Hiltachk, Charles H. Bell, Jr., Thomas W. Hiltachk and Jimmie E. Johnson for Interveners and Respondents.

OPINION

**RAYE, J.**—Convinced that the absence of limits on contributions to ballot measure committees controlled by candidates permitted candidates to circumvent statutory restrictions on campaign contributions, the California Fair Political Practices Commission (FPPC) promulgated a regulation limiting contributions to such committees. (Cal. Code Regs., tit. 2, § 18530.9 (hereafter regulation 18530.9).) In a legal challenge to the regulation brought by a campaign committee and a candidate, the trial court concluded plaintiffs would likely prevail on their claims that the regulation is unconstitutional and exceeded the FPPC's statutory authority. Because it believed plaintiffs would otherwise suffer irreparable harm by virtue of the regulation's chilling effect on the exercise of First Amendment rights, the trial court granted plaintiffs' request for a preliminary injunction pending trial.

Whatever the wisdom of the FPPC's effort to plug loopholes in California's campaign contribution regulatory scheme, we agree with the trial court's determination that the regulation conflicts with multiple provisions of the Political Reform Act of 1974 (PRA; Gov. Code, § 81000 et seq.)[1] and thereby exceeds the FPPC's authority. Our conclusion that the FPPC overstepped its authority renders a consideration of plaintiffs' constitutional claims unnecessary. Accordingly, we shall affirm the order granting a preliminary injunction.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

## BACKGROUND

The PRA regulates various aspects of the political process, including campaign contributions, the disclosure of financial information relating to public officials and their campaigns, and the activities of lobbyists. (§ 81002.) The FPPC administers the PRA (§ 83111) and has authority to promulgate regulations that are consistent with and further the purposes of the PRA (§ 83112). Violations of the PRA are punishable by criminal and civil penalties. (§§ 91000, 91005.5.)

The PRA may be amended only by a statute furthering its purposes and passed by a two-thirds vote of the Legislature, or by a statute approved by the electorate. (§ 81012.) In 2000 the electorate passed Proposition 34, the Campaign Contribution and Voluntary Expenditure Limits Without Taxpayer Financing Amendments to the Political Reform Act of 1974, which approved various amendments to the PRA. (See Stats. 2000, ch. 102, § 18, eff. July 7, 2000; Prop. 34, as approved by voters, Gen. Elec. (Nov. 7, 2000).)[2]

Section 85301 imposes specified limits upon the amount of money individuals may contribute to candidates for elective state office, candidates for statewide elective office, and candidates for Governor.[3] Section 85302 similarly imposes specified limits upon contributions made by small contributor

---

[2] Interveners and respondents Arnold Schwarzenegger et al. request that we take judicial notice of Proposition 34 and a variety of materials found on the Secretary of State's Web site. Additionally, respondents Citizens to Save California et al. request that we take judicial notice of a contribution expenditure listing from Citizens to Save California. A request for judicial notice of Proposition 34 is unnecessary; citation to the material is sufficient. (See *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 571, fn. 9 [1 Cal.Rptr.2d 731, 950 P.2d 1086].) The remaining materials are irrelevant to the dispositive issues raised by the appeal. Accordingly, the requests are denied.

[3] Section 85301 provides: "(a) A person, other than a small contributor committee or political party committee, may not make to any candidate for elective state office other than a candidate for statewide elective office, and a candidate for elective state office other than a candidate for statewide elective office may not accept from a person, any contribution totaling more than three thousand dollars ($3,000) per election.

"(b) Except to a candidate for Governor, a person, other than a small contributor committee or political party committee, may not make to any candidate for statewide elective office, and except a candidate for Governor, a candidate for statewide elective office may not accept from a person other than a small contributor committee or a political party committee, any contribution totaling more than five thousand dollars ($5,000) per election.

"(c) A person, other than a small contributor committee or political party committee, may not make to any candidate for Governor, and a candidate for governor may not accept from any person other than a small contributor committee or political party committee, any contribution totaling more than twenty thousand dollars ($20,000) per election.

"(d) The provisions of this section do not apply to a candidate's contributions of his or her personal funds to his or her own campaign."

committees.[4] These statutes encompass contributions to the candidate's controlled election or reelection committee, which contributions are required to be deposited in one campaign contribution account. (§ 85201.)

Section 85303 limits the amount of contributions made by individuals to political party committees, and to any committees other than political party committees, for the purpose of making contributions to candidates for elective state office. However, except as provided in section 85310 (concerning payments for communications that clearly identify a candidate for elective state office but do not expressly advocate the election or defeat of the candidate), there are no limitations upon a person's contributions to a committee or political party committee "provided the contributions are used for purposes other than making contributions to candidates for elective state office." (§ 85303, subd. (c).)

In eschewing limits on contributions to ballot measure committees, section 85303, subdivision (c) comports with *Citizens Against Rent Control v. Berkeley* (1981) 454 U.S. 290 [70 L.Ed.2d 492, 102 S.Ct. 434] (*CARC*). There, the United States Supreme Court held that although it is constitutional to limit contributions to candidates and their committees, an ordinance limiting contributions to ballot measure committees unconstitutionally nterfered with First Amendment freedoms of speech and association and was not justified by the governmental interest in preventing special interest groups from corrupting the initiative process. (*Id.* at pp. 293, 297–300.) *CARC* observed, " 'Referenda are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections [citations omitted] simply is not present in a popular vote on a public issue. . . .' [Citation.]" (*Id.* at p. 298.) "To place a Spartan limit—or indeed any limit—on individuals wishing to band together to advance their views on a ballot measure, while placing none on individuals acting alone, is clearly a restraint on the right of association." (*Id.* at p. 296.)

---

[4] Section 85302 provides: "(a) A small contributor committee may not make to any candidate for elective state office other than a candidate for statewide elective office, and a candidate for elective state office, other than a candidate for statewide elective office may not accept from a small contributor committee, any contribution totaling more than six thousand dollars ($6,000) per election.

"(b) Except to a candidate for Governor, a small contributor committee may not make to any candidate for statewide elective office and except for a candidate for Governor, a candidate for statewide elective office may not accept from a small contributor committee, any contribution totaling more than ten thousand dollars ($10,000) per election.

"(c) A small contributor committee may not make to any candidate for Governor, and a candidate for governor may not accept from a small contributor committee, any contribution totaling more than twenty thousand dollars ($20,000) per election."

*CARC* did not expressly address whether contributions to *candidate-controlled* ballot measure committees could be construed as contributions to the candidates who controlled the committees and hence be limited without violating the Constitution.

Initially, the FPPC interpreted *CARC, supra,* 454 U.S. 290, as precluding limits on contributions to candidate-controlled ballot measure committees and opined that the candidate contribution limits of the PRA did not apply to such committees because the funds are "used for purposes other than making contributions to candidates for elective state office." It changed its position in 2004, however, following the recall of Governor Gray Davis. Based on concerns that candidates were using ballot measure committees to promote their candidacies and evade the campaign contribution limits of the PRA, the FPPC adopted regulation 18530.9, which limits contributions to candidate-controlled ballot measure committees.

FPPC regulation 18530.9 provides, in relevant part: "(b) Notwithstanding Government Code sections [*sic*] 85310, subdivision (c), the contribution limits of Government Code sections 85301 and 85302 apply to any committee controlled by a candidate for elective state office that is established for the purpose of supporting or opposing state or local ballot measures. The applicable limit is that which applied to the controlling candidate at the time the ballot measure committee was formed or became controlled by that candidate."[5]

A "committee," within the meaning of the regulation, is "any person or combination of persons who directly or indirectly does any of the following: [¶] (a) Receives contributions totaling one thousand dollars ($1,000) or more in a calendar year. [¶] (b) Makes independent expenditures totaling one

---

[5] The full text of regulation 18530.9 provides: "(a) A ballot measure committee not controlled by a candidate for elective state office is not subject to the provisions of this regulation. A ballot measure committee becomes subject to the provisions of this regulation once it becomes controlled by a candidate for elective state office. However, a ballot measure committee controlled by an individual who ceases to be a candidate as defined in Government Code section 82007 is no longer subject to the provisions of this regulation.

"(b) Notwithstanding Government Code sections 85310, subdivision (c), the contribution limits of Government Code sections 85301 and 85302 apply to any committee controlled by a candidate for elective state office that is established for the purpose of supporting or opposing state or local ballot measures. The applicable limit is that which applied to the controlling candidate at the time the ballot measure committee was formed or became controlled by that candidate.

"(c) A ballot measure committee that is controlled by more than one candidate for elective state office is subject to the contribution limit of the candidate with the highest contribution limit under Government Code sections 85301 and 85302.

"(d) A ballot measure committee primarily formed to support or oppose a ballot measure or measures and controlled by a candidate for elective state office is subject to the post-election

thousand dollars ($1,000) or more in a calendar year; or [¶] (c) Makes contributions totaling ten thousand dollars ($10,000) or more in a calendar year to or at the behest of candidates or committees." (§ 82013.)

" 'Controlled committee' means a committee that is controlled directly or indirectly by a candidate . . . or that acts jointly with a candidate, [or] controlled committee . . . in connection with the making of expenditures. A candidate . . . controls a committee if he or she, his or her agent, or any other committee he or she controls has a significant influence on the actions or decisions of the committee." (§ 82016, subd. (a).) According to the FPPC, a "significant influence" includes being a voting member of a committee's leadership body or formulating campaign strategy.

" 'Candidate' means an individual who is listed on the ballot or who has qualified to have write-in votes on his or her behalf counted by election officials, for nomination for or election to any elective office, or who receives a contribution or makes an expenditure or gives his or her consent for any other person to receive a contribution or make an expenditure with a view to bringing about his or her nomination or election to any elective office, whether or not the specific elective office for which he or she will seek nomination or election is known at the time the contribution is received or the expenditure is made and whether or not he or she has announced his or her candidacy or filed a declaration of candidacy at such time. . . ." (§ 82007.) According to the FPPC, "officeholders are considered candidates, regardless of whether they are termed-out or have candidate committees open."

Under the regulation, a ballot measure committee controlled by a candidate for Governor may receive larger contributions than one controlled by a candidate for any other statewide elective office, which in turn can receive larger contributions than one controlled by a candidate for elective state office delineated by district. (§§ 85301, 85302; see fns. 3 & 4, *ante*, pp. 740–741.) Ballot measure committees that are not controlled by candidates are not subject to these contribution limits. (Reg. 18530.9, subd. (a); § 85303, subd. (c).)

---

fundraising limitations of Government Code section 85316. A general purpose ballot measure committee is not subject to the post-election fundraising limitations of Government Code section 85316.

"(e) A ballot measure committee controlled by a candidate for elective state office who also controls more than one committee for elective state office is subject to the highest contribution limit applicable to the candidate's elective state office committees.

"(f) The contribution limits applicable to a candidate controlled ballot measure committee under this regulation are subject to periodic adjustment pursuant to Government Code section 83124.

"(g) This regulation shall become effective on November 3, 2004."

Subsequent to the FPPC's promulgation of regulation 18530.9, the Legislature considered, but failed to pass, two bills that would have enacted a statute expressly limiting contributions to candidate-controlled ballot measure committees. (Assem. Bill No. 1980 (2003–2004 Reg. Sess.); Assem. Bill No. 709 (2005–2006 Reg. Sess.).)

On February 8, 2005, plaintiffs Citizens to Save California and Keith Richman, which are a ballot measure committee and a member of the California Assembly, filed a complaint for injunctive and declaratory relief against the FPPC concerning regulation 18530.9. Thereafter, the Governor and Governor Schwarzenegger's California Recovery Team, a ballot measure committee controlled by him, intervened as plaintiffs in the action. Senator John Campbell and two ballot measure committees, Rescue California From Budget Deficits and Taxpayers for Responsible Pensions, also intervened as plaintiffs by separate complaint. Plaintiffs alleged the regulation was invalid as it conflicted with various provisions of the PRA and unconstitutionally infringed upon their First Amendment freedoms of speech and association. They sought a preliminary injunction precluding enforcement of the regulation pending trial.

The trial court found plaintiffs had established a probability of success on the merits in that the FPPC's regulation conflicted with various provisions of the PRA, and the FPPC may not promulgate regulations that conflict with the PRA. However, the court found that the statutory conflicts did not warrant a preliminary injunction "because the only harm occasioned by the bare statutory infirmities is the existence of the invalid regulation until the action is finally resolved."

The court also found that plaintiffs had demonstrated a reasonable probability that regulation 18530.9 violated the First Amendment and that they would suffer imminent irreparable harm if a preliminary injunction did not issue enjoining the FPPC from enforcing the regulation pending trial. The court noted that a complaint had been filed with the FPPC alleging one of the plaintiffs had violated the regulation, and that all of the plaintiffs were chilled in their ability to associate with candidates or ballot measure committees because of the contribution limits imposed by regulation 18530.9. The court observed, "[Plaintiffs] may associate and champion their political causes, but severely limit their ability to amass resources essential to effectively advance their political ideas; or, they may maintain their full financial potential in parity with their opponents, but must surrender their ability to meaningfully associate and collaborate in the free exchange of political ideas." Accordingly, the court granted plaintiffs' request for a preliminary injunction.

## DISCUSSION

### I

The FPPC contends the trial court erred in finding that plaintiffs were likely to succeed on the merits with respect to their claim that the regulation is unconstitutional.

Plaintiffs disagree but maintain we need not and should not reach the constitutional issue because the trial court found that the regulation exceeded the FPPC's statutory authority to promulgate regulations, as it conflicted with portions of the PRA. The FPPC did not dispute this ruling in any meaningful way in its opening brief on appeal. Although the court found that a preliminary injunction was not warranted on this ground because the statutory violation would not result in irreparable harm pending trial, this is of no moment because where a pure question of law is presented, the reviewing court may address the issue on the merits, rendering a subsequent trial on the issue unnecessary. Moreover, according to plaintiffs, the court erred in finding that enforcement of the invalid regulation would not result in irreparable harm.

In its reply brief, the FPPC alleges it did not address the statutory issue because the court did not grant the preliminary injunction on this basis. It invites us to address the matter for "the benefit of the further proceedings in the Superior Court." However, it does not provide any analysis or authority refuting plaintiffs' claim that we can address the issue as a matter of law, which would render unnecessary any further proceedings on the statutory question.

Courts generally should avoid resolving constitutional issues if a case can be decided on statutory grounds. (*De Lancie v. Superior Court* (1982) 31 Cal.3d 865, 877, fn. 13 [183 Cal.Rptr. 866, 647 P.2d 142]; *Terhune v. Superior Court* (1998) 65 Cal.App.4th 864, 873 [76 Cal.Rptr.2d 841].) Hence, we should address the statutory claim first if it is dispositive and thereby renders litigation of the constitutional claim unnecessary. It does.

"Ordinarily an appeal from the granting of a preliminary injunction involves a very limited review of the trial court's exercise of discretion concerning two factors: (1) the likelihood that plaintiffs will ultimately prevail and (2) the interim harm plaintiffs will sustain if the preliminary injunction is denied compared to the interim harm defendant will suffer if the injunction is granted pending a final determination of the merits. [Citations.] [¶] Occasionally, however, the likelihood of prevailing on the merits depends upon a question of pure law rather than upon evidence to be introduced at a

subsequent full trial. . . . If such a question of pure law is presented, it can sometimes be determinative over the other factor . . . ." (*Hunter v. City of Whittier* (1989) 209 Cal.App.3d 588, 595–596 [257 Cal.Rptr. 559].)

In other words, if the trial court's ruling regarding the invalidity of the regulation is correct, plaintiffs will be entitled to the requested relief as a matter of law. No purpose would be served in remanding the matter for trial based solely on the absence of irreparable harm, as "[t]he issue of the validity of the challenged regulation[] is solely one of law, and this court is in as good a position to resolve the issue now as the trial court would be after determination of this appeal." (*North Coast Coalition v. Woods* (1980) 110 Cal.App.3d 800, 805 [168 Cal.Rptr. 95] (*North Coast*); see also *Jimenez v. Honig* (1987) 188 Cal.App.3d 1034, 1037 [233 Cal.Rptr. 817]; *Palos Verdes Shores Mobile Estates, Ltd. v. City of Los Angeles* (1983) 142 Cal.App.3d 362, 368 [190 Cal.Rptr. 866].)[6]

We are cognizant of the rule that except in a clear case we should not anticipate the final judgment of the trial court by disposition of an appeal from the order granting the preliminary injunction. (*North Coast, supra*, 110 Cal.App.3d at p. 805.) However, where a case is clear and no fact questions are presented, a determination on the merits is appropriate and becomes law of the case. (*Ibid.*)

Accordingly, we turn to the question of whether the regulation indeed is invalid as a matter of law.

## II

The FPPC's authority to promulgate regulations is governed by section 83112, which provides, in relevant part: "The Commission may adopt, amend and rescind rules and regulations to carry out the purposes and provisions of this title, and to govern procedures of the Commission. These rules and regulations shall be adopted in accordance with the Administrative Procedure Act . . . and shall be consistent with this title and other applicable law."

■ Section 83112 expressly incorporates the dictates of the Administrative Procedure Act (§ 11340 et seq.), which provides that to be effective, regulations "shall be within the scope of authority conferred and in accordance with standards prescribed by other provisions of law" (§ 11342.1) and that "no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute" (§ 11342.2).

---

[6] But see *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286–290 [219 Cal.Rptr. 467, 707 P.2d 840].

Because the FPPC is charged with administering the PRA, its view of the regulations enforcing and the statutes comprising the PRA is entitled to great weight unless clearly erroneous or unauthorized. (*Californians for Political Reform Foundation v. Fair Political Practices Com.* (1998) 61 Cal.App.4th 472, 484 [71 Cal.Rptr.2d 606].) "[W]here the regulation at issue is one deemed necessary to effectuate the purposes of the statute, we apply a more deferential standard of review, requiring only that the regulation be reasonable." (*Ibid.*) However, we do not defer to an agency's view when deciding whether a regulation lies within the scope of the authority delegated by the Legislature. "The court, not the agency, has 'final responsibility for the interpretation of the law' under which the regulation was issued." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11, fn. 4 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

■ Whether we are interpreting a voter initiative such as Proposition 34 or a statute enacted by the Legislature, the same principles of construction apply. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900–901 [135 Cal.Rptr.2d 30, 69 P.3d 951]; *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927].) We begin by examining the statutory language, giving the words their usual and ordinary meaning, viewed in the context of the statute as a whole and the overall statutory scheme. (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27] (*Rizo*).) If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) This is so because "it is the language of the statute itself that has successfully braved the legislative gauntlet." (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 [8 Cal.Rptr.2d 298]; accord, *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 338 [33 Cal.Rptr.2d 109, 878 P.2d 1321].)

■ "When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (*Rizo, supra,* 22 Cal.4th at p. 685.) However, a court cannot insert or omit words to cause the meaning of a statute to conform to a presumed intent that is not expressed. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175]; *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826–827 [4 Cal.Rptr.2d 615, 823 P.2d 1216]; Code Civ. Proc., § 1858.) "As a judicial body, it is our role to interpret the laws as they are written." (*San Diego Police Officers Assn. v. City of San Diego Civil Service Com.* (2002) 104 Cal.App.4th 275, 287 [128 Cal.Rptr.2d 248].) "[W]e may not properly interpret the measure in a way that the electorate did not

contemplate: the voters should get what they enacted, not more and not less." (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 [86 Cal.Rptr.2d 884, 980 P.2d 433].)

Proposition 34 contains an express declaration of its purpose and intent. Section 1(a) of the proposition declares, in relevant part: "(1) Monetary contributions to political campaigns are a legitimate form of participation in the American political process, but large contributions may corrupt or appear to corrupt candidates for elective office. [¶] (2) Increasing costs of political campaigns have forced many candidates to devote a substantial portion of their time to raising campaign contributions and less time to public policy." (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 34, p. 55.) Proposition 34's purpose, as stated in section 1(b), is "[t]o ensure that individuals and interest groups in our society have a fair and equitable opportunity to participate in the elective and governmental processes," and "[t]o minimize the potentially corrupting influence and appearance of corruption caused by large contributions by providing reasonable contribution and voluntary expenditure limits." (*Ibid.*)

■ This legislative purpose is implemented through precise limits on contributions for the support or defeat of candidates for elective state offices, and in some cases payments for communications that merely mention a candidate, as set forth in chapter 5 of the PRA (section 85100 et seq.). Limits on contributions by individuals are imposed by section 85301. Contributions by small contributor committees are limited by section 85302. Payments for communications that clearly identify a candidate for elective state office without advocating the candidate's election or defeat are limited by section 85303. Otherwise, "[n]othing in this chapter shall limit a person's contributions to a committee or political party committee provided the contributions are used for purposes other than making contributions to candidates for elective state office." (§ 85303, subd. (c).)

To reiterate, the PRA dictates that sections 85301 and 85302 do not apply to contributions to any committees, which would include ballot measure committees, as long as the money is used for purposes other than making contributions to candidates for elective state office. Into this clear and comprehensive regulatory scheme, the FPPC injects regulation 18530.9, which states that sections 85301 and 85302 apply to contributions to candidate-controlled ballot measure committees that are "established for the purpose of supporting or opposing state or local ballot measures." (Reg. 18530.9, subd. (b).) The conflict is manifest.

Regulation 18530.9 also conflicts with the portion of section 85303, subdivision (c) that provides that section 85310 applies to contributions to

committees. Section 85310 states, in relevant part: "(a) Any person who makes a payment or a promise of payment totaling fifty thousand dollars ($50,000) or more for a communication that clearly identifies a candidate for elective state office, but does not expressly advocate the election or defeat of the candidate, and that is disseminated, broadcast, or otherwise published within 45 days of an election, shall file online or electronically with the Secretary of State a report disclosing the name of the person, address, occupation, and employer, and amount of the payment. . . . [¶] . . . [¶] (c) Any payment received by a person who makes a communication described in subdivision (a) is subject to the limits specified in subdivision (b) of Section 85303 if the communication is made at the behest of the clearly identified candidate."

Section 85303, subdivision (b) provides: "A person may not make to any political party committee, and a political party committee may not accept, any contribution totaling more than twenty-five thousand dollars ($25,000) per calendar year for the purpose of making contributions for the support or defeat of candidates for elective state office. Notwithstanding Section 85312, this limit applies to contributions made to a political party used for the purpose of making expenditures at the behest of a candidate for elective state office for communications to party members related to the candidate's candidacy for elective state office."[7]

▨ This means that if a ballot measure committee makes a communication referred to in section 85310 and the communication is made at the behest of a candidate, the $25,000 contribution limit referred to in section 85303, subdivision (b) applies to the committee. But regulation 18530.9 limits candidate-controlled ballot measure committees to significantly less than the $25,000 contribution permitted by sections 85303 and 85310 because the regulation incorporates the contribution limits of sections 85301 and 85302, "[n]otwithstanding Government Code sections [*sic*] 85310, subdivision (c) . . . ." (Reg. 18530.9, subd. (b).) The FPPC proffers no authority that permits it to decrease contribution limits below those statutorily dictated by the PRA.

The FPPC contends there is no conflict between regulation 18530.9 and section 85303 because, in its view, contributions to candidate-controlled ballot measure committees are presumed to be contributions to candidates for

---

[7] Section 85312 provides, in relevant part: "For purposes of this title, payments for communications to members, employees, shareholders, or families of members, employees, or shareholders of an organization for the purpose of supporting or opposing a candidate or a ballot measure are not contributions or expenditures, provided those payments are not made for general public advertising such as broadcasting, billboards, and newspaper advertisements. . . ."

elective state office. However, this presumption is contrary to the language of the regulation, which recognizes that such committees are formed for the purpose of supporting or opposing state or local ballot measures, which means that contributions to the committee are contributions to oppose or support the ballot measure in question, not the controlling candidate.

Furthermore, treating contributions to a candidate-controlled ballot measure committee as contributions to a candidate for elective office conflicts with the one bank account rule set forth in section 85201, which provides, in relevant part: "(a) Upon the filing of the statement of intention [to be a candidate for an elective state office] pursuant to Section 85200, the individual shall establish one campaign contribution account at an office of a financial institution located in the state. [¶] . . . [¶] (c) All contributions or loans made to the candidate, to a person on behalf of the candidate, *or to the candidate's controlled committee* shall be deposited in the account. [¶] (d) Any personal funds which will be utilized to promote the election of the candidate shall be deposited in the account prior to expenditure. [¶] (e) All campaign expenditures shall be made from the account." (Italics added.)

Thus, if contributions to candidate-controlled ballot measure committees are treated as contributions to candidates for elective state office, then these contributions must be deposited in the candidate's campaign account pursuant to section 85201. But the FPPC maintains that section 85201 does not require that contributions to candidate-controlled ballot measure committees be deposited in the election account of the candidate. It does not believe this undermines its position, however, arguing ballot measure committees have always had their own bank accounts, regardless of whether the committee is controlled by a candidate. Of course, this overlooks that previously these candidate-controlled committees were not subject to sections 85301 and 85302 and were not treated as extensions of the candidate.

Although a candidate may maintain separate campaign contribution accounts for the primary and general elections (§ 85318),[8] or for each office for which a statement of intention is filed (Cal. Code Regs., tit. 2, § 18521, subd. (a)),[9] we could find nothing in the PRA regarding candidate-controlled noncampaign committees indicating that where the money funding these committees is subject to the limitations in sections 85301 and 85302, it need

---

[8] Section 85318 provides, in pertinent part: "Notwithstanding Section 85201, candidates for elective state office may establish separate campaign contribution accounts for the primary and general elections or special primary and special general elections."

[9] California Code of Regulations, title 2, section 18521 provides, in pertinent part: "(a) A candidate who is required to file a statement of organization for a controlled committee pursuant to Government Code section 84101 shall establish a separate controlled committee and campaign bank account for each specific office identified in statements [of intention to be a candidate for an elective state office] filed by the candidate . . . ."

not be deposited first in the candidate's election account before being disbursed to fund the candidate's noncampaign committees.

The FPPC is attempting to limit contributions to candidate-controlled ballot measure committees to the amount allowed for election campaign contributions without subjecting these contributions to the other portions of the PRA governing election contributions to a candidate, such as the one bank account rule. In fact, according to plaintiffs, the FPPC does not count contributions to a candidate's ballot measure committee against the contribution limits applicable to the candidate's (re)election committee, a contention the FPPC does not dispute in its reply brief. In other words, the FPPC would permit an individual to contribute $20,000 to the Governor's (re)election committee and $20,000 to *each* ballot measure committee controlled by the Governor. This indicates it does not truly view contributions to candidate-controlled ballot measure committees as contributions to the candidate, else the FPPC would count these contributions toward the $20,000 total contribution permissible under section 85301.

It appears the FPPC recognized that *CARC, supra,* 454 U.S. 290 precludes limits on contributions to ballot measure committees and attempted to evade this prohibition by the legal fiction that contributions to a candidate's ballot measure committee are made to the candidate and thus may be subjected to the candidate contribution limits of sections 85301 and 85302. But the FPPC does not treat these contributions consistently as being made to the candidate. If contributions to candidate-controlled ballot measure committees are limited in accordance with the amount permitted for the candidate's office because the contributions are deemed made to a candidate for elective office, then the other rules pertaining to candidates must also apply. The FPPC points to nothing in the PRA permitting candidate-controlled ballot measure committees to be treated as candidates in some circumstances and ballot measure committees in others. In effect, the FPPC has attempted to amend the PRA to create such a hybrid, but it lacks the authority to do so. (§§ 81012, 83112.)

Regulation 18530.9 is at odds with the language of the PRA. It is also inconsistent with the legislative intent underlying the PRA's contribution limits. The effect of regulation 18530.9 is to inhibit a candidate's involvement in the initiative process. Involvement will lead to restrictions on the ballot measure committee's fundraising. This conflicts with the voters' concern, as expressed in the ballot proposition, that candidates devote insufficient time to matters of public policy. (Voter Information Guide, Gen. Elec., *supra,* text of Prop. 34, p. 55.)

Moreover, the regulation limits the electorate's ability to work in tandem with elected officials to effectuate the electorate's public policy concerns,

which undermines Proposition 34's purpose of providing individuals and interest groups with a fair and equitable opportunity to participate in the elective and governmental processes. For example, if a candidate has "significant influence" over a controlled committee in favor of a ballot measure but no candidate is involved with the opposition committee, contribution limits are placed on the measure's proponents that are not placed on the measure's opponents. Similarly, if a candidate for Governor controls a committee in favor of a measure and a candidate for any other statewide office controls a committee opposing the measure, the proponents and opponents are subjected to different contribution limits. This is hardly a fair and equitable opportunity to participate in governmental processes.

The voter information guide reveals the voters were not told either expressly or implicitly that Proposition 34 would limit contributions to candidate-controlled ballot measure committees as opposed to merely limiting campaign contributions to candidates campaigning for elective office. In fact, the Legislative Analyst explained that the initiative measure repeals a provision in Proposition 208—a prior amendment to the PRA—"limiting contributions to political committees which operate independently of a candidate's campaign committee." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 34 by Legis. Analyst, pp. 13–14.) The summary prepared by the Attorney General states that Proposition 34 "[l]imits contributions to political parties/political committees for purpose of making contributions for support or defeat of candidates." (Voter Information Guide, Gen. Elec., *supra*, official title & summary of Prop. 34 prepared by Atty. Gen., p. 12.) This indicates that Proposition 34 was designed to limit contributions to a candidate's election or reelection campaign committee, not other committees.

Under the circumstances, it is doubtful the voters intended to limit contributions to candidate-controlled ballot measure committees or understood that passing the initiative would lead to such a result. Rather, with respect to ballot measure committees, Proposition 34 added statutes regarding *reporting* contributions to such committees, which indicates it is concerned with disclosing the identities of large contributors to those committees, not with limiting the contributions. (§§ 84511, 85309.) No distinction is made between candidate-controlled and noncandidate-controlled ballot measure committees, and no limitations are placed on the former that are not placed on the latter.

Furthermore, the proponents of Proposition 34 stated in the voter information guide that "[o]n three recent occasions, voters have approved ballot measures imposing strict contribution limits. Each time, the courts have struck them down. [¶] Unlike other reform measures, Proposition 34 was drafted by experts to fully comply with all court rulings." (Voter Information

Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 34, p. 17.) Given the stated assurance that Proposition 34 had been drafted to withstand court challenges, and in light of *Citizens, supra*, 454 U.S. 290, which held that an ordinance limiting contributions to ballot measure committees was unconstitutional, it is doubtful Proposition 34 was intended to limit contributions to candidate-controlled ballot measure committees since such an interpretation would inevitably lead to a court challenge to determine whether such a limitation was prohibited by *Citizens*.

The FPPC argues regulation 18530.9 is consistent with the PRA's purpose of avoiding the appearance of corruption. If large contributions to candidate-controlled ballot measure committees are permitted, it will appear that these contributors have purchased the right to have access to the candidate. Furthermore, candidates will be able to evade campaign contribution limits by raising money via their ballot committees and using the money to obtain media exposure during a campaign year.

The problem is that the regulation presumes a contribution to a candidate-controlled ballot measure committee is the equivalent of a contribution to a candidate *in all cases*, a proposition with which many contributors would disagree. Undoubtedly a contribution to a candidate's *campaign committee* is a contribution to the candidate since the sole purpose of the committee is the election or reelection of the candidate. Large contributions to the candidate for this purpose are more likely to result in the appearance of corruption. But a contribution to a *ballot measure committee*, even if controlled by a candidate, typically is a contribution for the passage or defeat of the initiative. The general appearance is that of support for or opposition to the initiative, not for the candidate.

As for the FPPC's concerns that contributions to candidate-controlled committees will be used to evade campaign contribution limits, it is noteworthy that the regulation does not attempt to control the use, or potential misuse, of the funds once they are contributed to the committee; it simply limits the contribution amount regardless of whether it is used by the committee solely for the legitimate purpose of advocating for or against the ballot measure. Regulation 18530.9 applies to a candidate-controlled committee even if (1) the candidate does not use the money for advertising in which he or she is prominently displayed at a time when the candidate is running for office, (2) the contributor is unaware of the candidate's relationship to the committee and is not attempting to gain political currency with the candidate, and (3) the contributor is opposed to the candidate but in favor of the candidate's position on the initiative measure.

In contrast, the regulation does not apply to contributions to ballot measure committees if a candidate has no influence or control over the committee but

(1) is asked to be a spokesperson for the committee's position and thereby gains significant public exposure during a campaign year, or (2) is asked to be present at a fundraising event accessible only to large contributors, thereby giving those large contributors access to the candidate. The result is that candidates who are sincerely interested in using the initiative process to advance legitimate legislative and public policy goals are hampered in doing so by regulation 18530.9, while candidates who simply seek to skirt campaign contribution laws and acquire more exposure than these contribution limits allow can do so by campaigning on behalf of a ballot measure committee as long as they do not control the committee or have a significant influence over its decisions and they comply with section 85310's limitations regarding communications made within 45 days of an election.

■ It is arbitrary and capricious to limit contributions to candidate-controlled ballot measure committees in a manner that financially hampers some but not all committees, regardless of whether the money actually is used by the candidate for the purpose of election to a specific office. Under the circumstances, regulation 18530.9 does not effectuate the purpose of the PRA because it ensnares contributions that do not implicate the evils the PRA is intended to prevent, and it undermines Proposition 34's emphasis on providing individuals and interest groups with a fair and equitable opportunity to participate in the elective and governmental processes. Moreover, as we earlier explained, regulation 18530.9 directly conflicts with portions of the PRA.

Accordingly, because regulation 18530.9 is inconsistent with the PRA, it is an invalid regulation.

## III

The FPPC contends that section 11350 limits the evidence the court can consider in a declaratory relief action and posits the trial court erred in limiting the evidentiary record in accordance with section 11350 solely with respect to the statutory issue but not as to the constitutional issue. In light of our ruling on the statutory issue, we need not reach the constitutional issue. Accordingly, because the FPPC does not challenge the evidence admitted by the court with respect to the statutory issue, it is unnecessary to address this contention.

## DISPOSITION

The order granting a preliminary injunction is affirmed.

Sims, Acting P. J., and Nicholson, J., concurred.