Filed 3/24/21  MacWhirter v. Sherwood Development Co. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MARK MACWHIRTER ET AL., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> SHERWOOD DEVELOPMENT COMPANY, L.P., ET AL. <br><br> Defendants and Appellants. | 2d Civ. No. B298615 <br> (Super. Ct. No. 56-2019-00525214-CU-OR-VTA) <br> (Ventura County) |

Respondents parked along the private road in front of their houses for decades.  When respondents ignored requests to stop the practice, appellants hired crews and dump trucks to place hundreds of boulders along the road's edge.  Respondents sued to establish prescriptive easements and sought a preliminary injunction restoring their parking rights.  The court issued the preliminary injunction and ordered appellants to restore the status quo by moving enough of the boulders to provide each household with three parking spaces pending trial.

Appellants appeal the preliminary injunction. They contend the court abused its discretion by granting respondents' request despite a lack of evidence supporting their claims. They also contend the claims are barred because lake access rights were litigated and resolved long ago by the parties' predecessors in interest. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Respondents own eight waterfront houses in Lake Sherwood, an unincorporated community in Ventura County surrounding a man-made eponymous lake. Their houses sit on Lower Lake Road along the southern shore. Sherwood Development Company, L.P., formerly LSR Limited Partnership (SDC), owns the lake and a narrow piece of land called the "reserve strip" that encircles it. Respondents must cross the road and reserve strip to reach the shore.

Sherwood Valley Homeowners Association (Association) manages the lake and reserve strip on SDC's behalf. The Association sent a letter to residents in July of 2018 concerning unauthorized parking on the reserve strip along Lower Lake Road. When the practice did not stop, the Association hired crews and dump trucks to place hundreds of locally sourced boulders along the road's edge on the morning of January 28, 2019. This prevented parking on the shoulder or accessing the reserve strip by any means except foot or bicycle.

Respondents sued to quiet title and to enjoin SDC and the Association (collectively Appellants) from obstructing their access to the reserve strip. They also claimed prescriptive easements rights over areas traditionally used for parking. The Association denied any prescriptive easements existed and accused respondents of violating the same judgments they sought to enforce.

The trial court issued a mandatory preliminary injunction ordering the Association and SDC to remove those boulders placed in respondents' alleged parking areas. The injunction provided for three spaces for each of the eight houses involved in the action. The court also ordered the Association and SDC to cover up five recently installed "no parking" signs and to refrain from obstructing the parking areas pending trial.

The Association and SDC appealed the preliminary injunction. (Code Civ. Proc., § 904.1, subd. (a)(6).) The case is scheduled for trial in November of 2021.[1]

DISCUSSION

*Standard of Review*

"'In determining whether to issue a preliminary injunction, the trial court considers two related factors: (1) the likelihood that the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm that the plaintiff is likely to sustain if the injunction is denied as compared to the harm that the defendant is likely to suffer if the court grants a preliminary injunction. [Citation.]'" (*Donahue Schriber Realty Group, Inc. v. Nu Creation Outreach* (2014) 232 Cal.App.4th 1171, 1177; see Code Civ. Proc., § 526, subd. (a).) We reverse an order granting or denying the request only if the trial court abused its discretion as to both factors. (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286-287.) We review questions of law de novo. (*Donahue Schriber Realty Group, Inc.* at p. 1176.)

---

[1] Respondents sought writ review of the trial court's subsequent decision to stay proceedings pending resolution of this appeal. (See Case No. B300380.) We denied the petition in our order dated October 8, 2019.

3

*The Trial Court Properly Exercised Its Discretion When*
*Considering the Parties' Disputed Evidence*

SDC contends the trial court abused its discretion by issuing a preliminary injunction without adequate evidence of respondents' right to prescriptive parking easements on the reserve strip. (*See Hagen v. Beth* (1897) 118 Cal. 330, 331 ["The granting of a mandatory injunction pending trial . . . is not permitted except in extreme cases where the right thereto is clearly established and it appears that irreparable injury will flow from its refusal"].) SDC states the trial court would have denied injunctive relief had it performed an individualized factual analysis of respondents' claims. We conclude no abuse of discretion occurred.

The two-part preliminary injunction test requires the trial court to assess a case's merits while also contemplating the possible effects of a provisional ruling. (See *White v. Davis* (2003) 30 Cal.4th 528, 554, quoting *IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 73, italics omitted ["'The ultimate goal of any test to be used in deciding whether a preliminary injunction should issue is to minimize the harm which an erroneous interim decision may cause'"].) Here, the parties presented the court with a significant amount of evidence at the outset of the case. Declarations from ten individuals described events occurring over the span of several decades. Deeds and conveyance filings for eight houses, four judgments from the 1960s and 1970s, several letters, and over two hundred photographs are attached to these declarations. Each respondent proffered evidence supporting their causes of action and describing harm allegedly caused by SDC's anti-parking measures. Likewise, SDC introduced conflicting evidence on each point and interjected myriad objections.

4

We decline to weigh the relative strength of disputed evidence on appeal. (See *Citizens to Save California v. California Fair Political Practices Com.* (2006) 145 Cal.App.4th 736, 746 ["[E]xcept in a clear case we should not anticipate the final judgment of the trial court by disposition of an appeal from the order granting the preliminary injunction"].) Factual questions created by conflicting evidence, such as whether SDC's boulders endanger pedestrians to a degree constituting "great" injury, are the trial court's province. (See *Bennett v. Lew* (1984) 151 Cal.App.3d 1177, 1184, quoting *Monogram Industries, Inc. v. Sar Industries* (1976) 64 Cal.App.3d 692, 704 ["'[The] trial court is the judge of the credibility of the affidavits filed in support of the application for preliminary injunction and it is that court's province to resolve conflicts'"].)

We note the trial court held a hearing to discuss the injunction after the parties could not stipulate to its terms. The lack of a reporter's transcript leaves us to speculate about what happened. (See, e.g., *Sui v. Landi* (1985) 163 Cal.App.3d 383, 385-386 [affirming an order denying preliminary injunction dissolution based on lack of reporter's transcript].) However, handwritten interlineations on the injunction show the court sought to address SDC's concerns about compliance deadlines and potential quagga mussel infestation. It limited parking to eight small quadrangles on the reserve strip and ordered SDC to remove only the boulders placed in those areas. The court allowed the "no parking" signs to remain if SDC covered them temporarily. The injunction appears to be the product of a deliberate and collaborative balancing process intended to maintain the status quo while leaving the lion's share of SDC's anti-parking measures intact.

*The Trial Court Did Not Abuse its Discretion By Not Considering the Historical Judgments' Injunction Clauses*

Litigation over lake access in the 1960s and 1970s resulted in four judgments relating to the rights of residents to access and use Lake Sherwood. These judgments granted certain easement and property rights to the owners of waterfront lots, including the right to maintain a private boat dock, to moor watercraft, and to traverse the reserve strip for the purpose of using the lake. Each respondent asserts lake access rights under one of these historical judgments.[2]

Three of the four historical judgments contain clauses similar or identical to the following: "[E]ach and all of the plaintiffs and cross-defendants . . . shall be, and they are hereby, forever restrained and enjoined from asserting any right, title and interest or lien in and to said real property, adverse to that of Dayton Realty Co. or its successors in interest, except as specifically set forth in said paragraphs."[3] SDC contends these clauses prohibit most of the respondents from asserting additional easement rights, and should have weighed heavily on the trial court's analysis of respondent's likelihood of prevailing

---

[2] The record contains judgments in the following actions: (1) *Canterbury v. Hill* (Case No. 45461), recorded January 9, 1961 (MacWhirter property); (2) *Bruder v. Dayton Realty Co.* (Case No. 48018), recorded September 26, 1969 (Hilliard, River Range, Singh, and Tyoran properties); (3) *Dayton Realty Co. v. Landon* (Case No. 54492), recorded May 4, 1973 (Capri property); and (4) *Dayton Realty Co. v. Fineberg* (Case No. 54116), recorded March 28, 1974 (Hibma property).

[3] Dayton Realty Co. is SDC's predecessor in interest.

on the merits.[4]  (See *Citizens to Save California v. California Fair Political Practices Com.*, *supra*, 145 Cal.App.4th at pp. 745-746, quoting *Hunter v. City of Whittier* (1989) 209 Cal.App.3d 588, 595-596 ["Occasionally . . . the likelihood of prevailing on the merits depends upon a question of pure law rather than upon evidence to be introduced at a subsequent full trial. . . .  If such a question of pure law is presented, it can sometimes be determinative over the other factor"].)  Respondents insist the historical judgments do not apply, and contend SDC waived the issue on appeal by failing to raise the argument below.  (See *Findleton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569, citing Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2017) ¶ 8:233, p. 8-175 [theory of trial doctrine "applies to defenses as well as theories of liability"].)

The "forever restrained and enjoined" language cited by SDC is commonly found in quiet title judgments.  (See *Goldstein v. Prien* (1956) 143 Cal.App.2d 123, 129 ["The action was of the character of a quiet title action and an injunction from setting up a claim against such title is generally part of the relief afforded"].)  Our high court has affirmed similar injunction clauses.  (See, e.g., *Lake v. Superior Court* (1913) 165 Cal. 182, 191 ["Upon the face of the judgment, moreover, no question can arise as to its intended scope.  It is broad enough, and designedly broad enough, to prohibit these petitioners, their successors and privies, from ever again . . . asserting or claiming any right to or interest in the real property affected by that judgment"].)  But

---

[4] The judgments in *Bruder*, *Landon*, and *Fineberg* contain such language.  The default judgment recorded in *Canterbury v. Hill*, relating to the property owned by MacWhirter respondents, does not.

7

respondents correctly observe SDC did not invoke these clauses prior to appealing.  SDC referred below to respondents "breaching" the judgments by using the reserve strip for parking but did not characterize this action as violating the judgments' injunctions or as constituting contempt.  In addition, the absence of SDC's responsive pleadings in the record leaves us unable to confirm which affirmative defenses it raised to respondents' complaint.  We conclude respondents waived the right to assert this theory on the instant appeal but stop short of finding wholesale waiver at this early stage of the case.  We leave the trial court to decide on remand how to best adjudicate issues relating to the historical judgments.

*The Trial Court Did Not Abuse Its Discretion By Issuing a Preliminary Injunction in the Absence of Allegedly Indispensable Parties*

SDC contends the court also abused its discretion by issuing a preliminary injunction without participation from the 100+ homeowners granted lake access easements under the historical judgments.  SDC characterizes these parties as indispensable because the preliminary injunction affects their express right to recreate in areas now dedicated to parking.  Again, we do not agree.

Compulsory joinder is limited "to those situations where the absence of a person may result in substantial prejudice to that person or to the parties already before the court."  (Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., foll. § 389.)  The record does not show the non-named parties suffered prejudice when the court issued the preliminary injunction in their absence.  They may still move to intervene if they find their access to the lake and reserve strip impinged.  (Code Civ. Proc., § 387.)  The injunction imposes no obligation on them.  While

8

some may wish to participate in the action, as SDC insists, some may not welcome process servers, first appearance fees, and the inevitable attorney invoices. The court did not abuse its discretion by not forcing them to the table. (See *County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1151, quoting *Serrano v. Priest* (1976) 18 Cal.3d 728, 753, italics omitted ["'in dealing with the doctrine of indispensable . . . parties "we should . . . be careful to avoid converting a discretionary power or a rule of fairness in procedure into an arbitrary and burdensome requirement which may thwart rather than accomplish justice"'"].)

SDC also asserts these parties must be included in any quiet title judgment that results from this case. (See *Ranch at the Falls LLC v. O'Neal* (2019) 38 Cal.App.5th 155, 173, citing *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 667.) The assertion is premature. This appeal concerns an interlocutory ruling. Preliminary injunctions are by their nature a provisional remedy intended to preserve the status quo pending the court's final determination of an action's merits. (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528; *DVD Copy Control Assn., Inc. v. Bunner* (2004) 116 Cal.App.4th 241, 249; see *People ex rel. Bender v. Wind River Mining Project* (1990) 219 Cal.App.3d 1390, 1395, citing *People v. Black's Food Store* (1940) 16 Cal.2d 59, 61-62 [trial court's findings at preliminary injunction stage have no preclusive effect at trial].)

In addition, the absence of adverse parties does not deprive the court of jurisdiction to adjudicate disputes between those already before the court. It "merely results in a judgment that does not bind those unnamed parties." (*Seror v. Stone (In re Automated Fin. Corp.)*, 2011 Bankr. LEXIS 291, *11; Code Civ. Proc., § 764.045; see *Washington Mutual Bank v. Blechman,*

9

*supra*, 157 Cal.App.4th 662 [default judgment subject to collateral attack by nonjoined indispensable party]; *Thomson v. Talbert Drainage Dist.* (1959) 168 Cal.App.2d 687 [trial court properly vacated permanent injunction entered in the absence of nonjoined lessee who lost rights to dispose of wastewater into defendant's drainage system].)

SDC may still move to join additional parties it believes indispensable. If the trial court denies joinder, SDC may seek review of the ruling on appeal of the final judgment. (See *Ranch at the Falls LLC v. O'Neal, supra*, 38 Cal.App.5th 155 [quiet title judgment reversed because trial court did not join homeowners who held fee interest in private road subject to easement claims].) SDC may also move to modify the injunction as the case develops. (Code Civ. Proc., § 533.) The trial court, however, need not have remained idle for months while respondents identified, named, and served process on more than 100 additional parties.

CONCLUSION

The judgment is affirmed. Respondents shall recover their costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

YEGAN, Acting P. J.          TANGEMAN, J.

10

Henry J. Walsh, Judge
Superior Court County of Ventura

_____


Sheppard, Mullin, Richter & Hampton, Theona Zhordania and Matthew G. Halgren for Defendant and Appellant Sherwood Development Company, L.P.

SwedelsonGottlieb, David Swedelson and Joan E. Lewis-Heard, for Defendant and Appellant Sherwood Valley Homeowners Association.

The Law Office of Daniel Friedlander, Daniel A. Friedlander, for Plaintiffs and Respondents.