[No. C051696. Third Dist. May 8, 2007.]

MICHAEL M. MILLER et al., Plaintiffs and Respondents, v.
GALE FILTER et al., Defendants and Appellants.

COUNSEL

Knox, Lemmon & Anapolsky, Thomas S. Knox and Glen C. Hansen for Defendants and Appellants.

Bill Lockyer, Attorney General, Tom Greene, Chief Assistant Attorney General, Mary E. Hackenbracht, Assistant Attorney General, and William N. Brieger, Deputy Attorney General, as Amici Curiae on behalf of Defendants and Appellants.

Klaus J. Kolb for Plaintiff and Respondent Original Sixteen to One Mine, Inc.

No appearance for Plaintiff and Respondent Michael M. Miller.

OPINION

SCOTLAND, P. J.—A little-known contractual agreement, coupled with statutory authority, allowed the District Attorney of Sierra County to temporarily "deputize" lawyers employed by the California District Attorneys Association (CDAA) so they could prosecute the Original Sixteen to One

 

Mine, Inc. (the Mine), and Michael M. Miller, the Mine's director, for alleged violations of worker safety laws that resulted in a workplace accident and death.[1]

After the trial court dismissed the criminal charges for lack of proof that worker safety violations caused the fatality, Miller and the Mine sued CDAA and its employees for malicious prosecution and related causes of action. Defendants filed an anti-SLAPP motion, asserting that the lawsuit was a SLAPP—strategic lawsuit against public participation—with no probability of success because they were immune from liability for their actions as prosecutors. (Code Civ. Proc., § 425.16, subd. (b)(1) [a lawsuit arising from an act of the defendant in furtherance of his or her right of petition or free speech in connection with a public issue is subject to a motion to strike, unless the trial court determines that the plaintiff has established there is a probability that the plaintiff will prevail on the claim].) The trial court denied the motion, concluding that defendants were not entitled to protection of the anti-SLAPP statute and that, in any event, there are triable issues of fact regarding whether defendants are entitled to prosecutorial immunity. The trial court erred.

We conclude the undisputed evidence establishes that CDAA and its deputized employees were absolutely immune from liability in the lawsuit against them and, thus, the trial court should have granted their anti-SLAPP motion. As we will explain, it is true that the district attorney's appointment of the CDAA employees to serve as deputy district attorneys was technically deficient because, although they signed and filed written oaths of office with the clerk of the superior court, the district attorney neglected to file their written appointments, as required by statute. Nevertheless, defendants were de facto deputy district attorneys engaged in protected activity when they prosecuted the criminal action against Miller and the Mine, and were immune from civil liability for their actions as prosecutors. Consequently, Miller and the Mine could not prevail in their lawsuit against the deputized employees and CDAA, and the court should have stricken the complaint, dismissed the lawsuit against defendants, and considered their entitlement to attorney fees. (Code Civ. Proc., § 425.16, subds. (b)(1), (c).)

## FACTS AND PROCEDURAL BACKGROUND

Recognizing that "[m]any rural district attorneys do not have the resources or experience to pursue the enforcement of the provisions of the Labor Code

---

[1] CDAA, a private nonprofit association of California's 58 elected district attorneys and over 2,200 deputy district attorneys, provides legal education, training, legislative advocacy, and other support for district attorneys' offices.

applicable to employee safety in their counties," California's Department of Industrial Relations entered into a contract with CDAA, whereby the department provided funding for CDAA to employ lawyers and an investigator to "assist prosecutors in rural counties to investigate and prosecute" the violation of workplace safety laws and regulations. The contract stated that "elected District Attorneys will, as appropriate, deputize these attorneys and investigator to handle criminal and civil investigations and prosecutions within the respective participating counties."

On November 6, 2000, Mark Fussell died in a workplace accident, while Miller was director of the Mine. The California Department of Industrial Relations, Division of Occupational Safety and Health, reported that Fussell died from blunt force injuries when his head was caught between a protruding unmarked ore shoot and a small battery powered electric locomotive. The United States Department of Labor, Mine Safety and Health Administration concluded that the "root cause of the accident was the failure of the mine operator to install warning devices in advance of and at the ore chute to conspicuously mark the restricted clearance."

The Department of Industrial Relations referred the matter to Sierra County District Attorney Sharon O'Sullivan for consideration of criminal charges and told her that CDAA employees Gale Filter and Kyle Hedum would present the investigation report to her in person. They did so, and O'Sullivan appointed them to prosecute Miller and the Mine for Fussell's death. (Gov. Code, § 24101 ["Every county or district officer . . . may appoint as many deputies as are necessary for the prompt and faithful discharge of the duties of his office"].)

Filter, Hedum, and two other CDAA employees, Anthony Patchett and Denise Mejlszenkier, were sworn in as deputy district attorneys and signed written oaths of office before the clerk of the superior court.[2] The oaths were filed with the superior court, but District Attorney O'Sullivan neglected to file the written appointments with the county clerk, as required by Government Code section 24102.

Filter, Hedum, Mejlszenkier, and Patchett then prosecuted Miller and the Mine, alleging that Fussell's death was caused by the willful violation of

---

[2] The written oath states: "For the Office of DEPUTY DISTRICT ATTORNEY, Sierra County [¶] I, . . . , do solemnly swear (of [sic] affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter."

occupational safety standards. Filter and Mejlszenkier presented the case to the Sierra County Grand Jury, and Patchett served as the grand jury adviser. Miller and the Mine were indicted for involuntary manslaughter and a violation of Labor Code section 6425, subdivision (a), the willful violation of an occupational safety standard, causing death.

Miller moved to set aside the indictment on the grounds that the prosecutors (1) knowingly and willfully misled the grand jury regarding the existence of exculpatory evidence, and (2) presented inadmissible evidence. The trial court granted the motion and dismissed the criminal case, ruling that the failure of Miller and the Mine to comply with safety regulations did not cause Fussell's death. District Attorney Larry Allen, who succeeded O'Sullivan, declined to pursue the charges against Miller and the Mine, noting that manslaughter charges did not apply absent gross negligence and that their conduct may have amounted to only simple negligence.

Miller and the Mine (plaintiffs) then sued Filter, Hedum, Mejlszenkier, Patchett, and CDAA (defendants) for malicious prosecution, intentional interference with prospective economic advantage, intentional and negligent infliction of emotional distress, and negligent employment and supervision. Plaintiffs alleged that defendants were not public employees and conspired to prosecute plaintiffs without complying with the mandate of Government Code section 24102, and that defendants wrongfully misled the Sierra County Grand Jury by concealing exculpatory evidence, which resulted in plaintiffs' indictment without probable cause. According to plaintiffs, defendants knew they lacked the lawful authority to prosecute plaintiffs and also knew they lacked probable cause, but prosecuted the action anyway in order to gain notoriety and destroy plaintiffs' financial viability.

Defendants filed an anti-SLAPP motion to strike plaintiffs' complaint, asserting that (1) plaintiffs' causes of action were premised on defendants' conduct in criminally prosecuting them, which was in furtherance of a protected activity within the meaning of the anti-SLAPP statute, and (2) plaintiffs were unlikely to prevail because their claims were barred by prosecutorial immunity (Gov. Code, § 821.6) and/or the litigation privilege (Civ. Code, § 47, subd. (b)).

Plaintiffs opposed the motion, arguing that the anti-SLAPP statute did not protect defendants' conduct because it was illegal as a matter of law in that District Attorney O'Sullivan failed to file the appointing paperwork required to make them deputy district attorneys, and there was no evidence, other than their declarations, that she indeed appointed them; hence, they were not lawfully acting as prosecutors and could be held liable for falsely and maliciously conspiring to indict plaintiffs for a crime related to the mining

accident (Pen. Code, § 182) and for acting as an officer or attorney of a court without authority (Bus. & Prof. Code, § 6127). Plaintiffs also claimed that there were disputed questions of fact as to whether defendants had acted as de facto deputy district attorneys under O'Sullivan's supervision; that even if defendants were de facto district attorneys, they were not entitled to prosecutorial immunity because it applies only to de jure officers; and that since defendants were employed by CDAA, they were not public employees and were not entitled to governmental immunity.

Defendants countered that their written oaths were the functional equivalent of a written appointment and that, at a minimum, they were de facto deputy district attorneys because they acted at the direction of District Attorney O'Sullivan, who knowingly permitted them to prosecute the criminal action under the auspices of her office; thus, their conduct was protected by prosecutorial immunity and the litigation privilege.

The trial court ruled as follows: (1) the gravamen of plaintiffs' complaint is that the individual defendants acted maliciously and without lawful authority when they conspired to conceal evidence from the grand jury, leading to a felony indictment against plaintiffs; (2) defendants were not entitled to the protection of the anti-SLAPP statute because, having failed to comply with the method of appointment mandated by Government Code section 24102, their conduct was illegal as a matter of law; and (3) even if defendants' conduct was not illegal as a matter of law, there were "major factual disputes as to whether defendants can claim to be de facto officers and it is highly questionable" that de facto officers are entitled to the absolute immunity afforded by Government Code section 821.6. Consequently, the court denied defendants' anti-SLAPP motion. (Code Civ. Proc., § 425.16; further section references are to the Code of Civil Procedure unless otherwise specified.)

Defendants appeal. We shall reverse with directions to grant the motion, strike the complaint, and address defendants' entitlement to attorney fees. (§ 425.16, subds. (b)(1), (c).)

### DISCUSSION

### I

It is true that although the anti-SLAPP statute states that it should be "construed broadly" (§ 425.16, subd. (a)), it "cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 317 [46 Cal.Rptr.3d 606, 139 P.3d 2]

(hereafter *Flatley*).) What is not true is the Mine's claim[3] and the trial court's finding that defendants' prosecution of Miller and the Mine was illegal as a matter of law with respect to the anti-SLAPP statute simply because the district attorney neglected to file her written appointments of the CDAA employees as deputy district attorneys, as required by section 24102 of the Government Code.

A district attorney "may appoint as many deputies as are necessary for the prompt and faithful discharge of the duties of his office." (Gov. Code, § 24101.) However, "[a]n appointee shall not act as deputy until: [¶] (a) A written appointment by the deputy's principal is filed with the county clerk. [¶] (b) A copy of the appointment is filed with the county auditor, if the auditor has so requested. [¶] (c) The deputy has taken the oath of office. . . ." (Gov. Code, § 24102.)

Defendants tender two reasons why, in their view, the district attorney's failure to file the written appointments is not a problem for them: (1) their written oaths filed with the court clerk were sufficient to fulfill the written appointment requirement of Government Code section 24102; and (2) even if that statutory requirement was not met, the technical deficiency in their appointments does not mean that their ensuing prosecutorial conduct was illegal for purposes of the anti-SLAPP statute. We disagree with their first assertion but agree with the second.

Government Code section 24102 requires both an "oath of office" taken by the deputy county officer *and* a "written appointment by the deputy's principal . . . filed with the county clerk." Given the plain language of the statute, defendants' oaths of office alone, filed with the county clerk, did not meet the two requirements of the statute.

It does not follow, however, that absent the filing of their written appointments, defendants' actions as prosecutors were illegal in the sense that they were not protected activities for purposes of the anti-SLAPP statute, as construed by California's Supreme Court in *Flatley*, *supra*, 39 Cal.4th 299.

The conduct in *Flatley* that "was undeserving of the protection of the anti-SLAPP statute" was an attorney's attempt to extort money from an entertainer who engaged in consensual sexual activity with the attorney's client. (*Flatley, supra*, 39 Cal.4th at p. 325, capitalization and italics omitted.) The attorney threatened that, unless the entertainer paid $1 million to settle the client's claims of battery and emotional distress, the attorney would tell the news media that the entertainer had raped the woman. (*Id.* at p. 329.)

---

[3] Miller did not file an appellate brief.

This was criminal extortion that did not deserve anti-SLAPP statute protection because it was "not constitutionally protected activity" for purposes of the statute. (*Id.* at pp. 330, 333.)

Other conduct found to be undeserving of the protection of the anti-SLAPP statute includes (1) the actions of animal rights activists who, in a campaign to expose the alleged abusive treatment of animals by a biomedical testing laboratory, broke windows of the homes of laboratory employees, vandalized their cars, set off ear-piercing alarms in their yards, left excrement on their doorsteps, and published personal information on the Internet about employees, their spouses and their children—some of which was criminal conduct and none of which was protected by the First Amendment (*Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, 1288, 1296–1297 [50 Cal.Rptr.3d 27]), and (2) campaign money laundering—illegal conduct unprotected by the First Amendment (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1363, 1365–1367 [102 Cal.Rptr.2d 864], disapproved on another point in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685]).

In contrast, defendants' actions as deputy district attorneys prosecuting Miller and the Mine—after signing and filing oaths of office following defendants' appointment by the district attorney—do not constitute the type of conduct that is undeserving of anti-SLAPP statute protection simply because the district attorney failed to comply with her ministerial duty to file with the county clerk the written appointments of defendants as deputy district attorneys. Indeed, the undisputed, competent evidence discloses that defendants were de facto deputy district attorneys as a matter of law, which means that their prosecution of Miller and the Mine was not illegal.

■ A de facto officer is "one who actually assumes and exercises the duties of a public office under color of a known and authorized appointment, but who has failed to comply with all of the requirements and conditions by law prescribed as a precedent to the performance of the duties of the office." (*People v. Cradlebaugh* (1914) 24 Cal.App. 489, 491 [141 P. 943] [a deputy sheriff who had been appointed by the sheriff and had taken the oath of office, but who had not filed his appointment with the county clerk, was a de facto officer].) Actions of a de facto officer exercising the functions of the office " ' "lawfully and with the acquiescence of the public . . . within the scope and by the apparent authority of office . . . [are] valid and binding as if he were the officer legally . . . qualified for the office and in full possession of it." [Citations.]' " (*Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 54 [30 Cal.Rptr.3d 30, 113 P.3d 1062], quoting *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 42 [37 Cal.Rptr. 74, 389 P.2d 538].)

In other words, the acts of a de facto official performed under the color of title are valid with regard to the public, even if the official's appointment was irregular. (*Ryder v. United States* (1995) 515 U.S. 177, 180 [132 L.Ed.2d 136, 142, 115 S.Ct. 2031].) " 'The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.' [Citation.]" (*Ibid.*; see also *Marine Forests Society v. California Coastal Com., supra,* 36 Cal.4th at p. 56.)

Here, Filter, Hedum, Mejlszenkier, and Patchett all declared that District Attorney O'Sullivan asked for, or approved of, their assistance in prosecuting the criminal action against Miller and the Mine, and that O'Sullivan appointed them and had them sworn in as deputy district attorneys by the superior court clerk, Jan Hamilton. In fact, O'Sullivan was present when Hamilton swore in Hedum. Hamilton declared that she was directed to administer the oath to each defendant by either O'Sullivan or O'Sullivan's secretary. And Mejlszenkier declared that O'Sullivan or her assistant directed Mejlszenkier to obtain an identification card from the Sierra County Sheriff's Department. The identification card issued by the sheriff "certifies" that Mejlszenkier is a "duly appointed" deputy district attorney. With O'Sullivan's approval, Mejlszenkier worked out of the office of the Sierra County District Attorney and used official stationery in her communications with Miller and the Mine.

Even Miller acknowledged the appointments. In a letter to District Attorney O'Sullivan, Miller wrote: "It is within your authority to address the injustices and possible illegalities perpetrated by [defendants]. [¶] I request that you reevaluate the special privileges you authorized these private lawyers to prosecute in Sierra County. Jan Hamilton swore in Kyle Hedum on November 22, 2001 and Denise Mejlszenkier on June 11, 2002 to practice prosecution under your authority. I request that you immediately revoke this privilege. [¶] These individuals and their association have violated our statutory and constitutional rights. Sadly they are doing this with your direct approval. . . ." After Miller wrote two more letters to her, O'Sullivan replied: "You indicated that you are troubled that I have not responded to your written requests. As you know I am not the prosecutor of record on this case and, therefore, I will not be discussing the case with you. Your correspondence has been forwarded to the prosecutor, Denise Mejlszenkier, who is handling this case."

All of this undisputed evidence establishes that District Attorney O'Sullivan was aware of the criminal action against Miller and the Mine, and

appointed defendants to prosecute it. The fact that O'Sullivan neglected to file the written appointments did not render the ensuing criminal prosecution unlawful; it merely altered defendants' status from de jure prosecutors to de facto deputy district attorneys.

The Mine's efforts to characterize defendants as impersonators, not de facto deputy district attorneys, is based upon inadmissible hearsay in Miller's declaration.[4] Thus, we disregard it. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236, 1238, 1240 [132 Cal.Rptr.2d 57]; see also *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 315 [106 Cal.Rptr.2d 906]; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 21, fn. 16 [43 Cal.Rptr.2d 350].)

In any event, Miller's declaration does not create an issue of fact concerning whether defendants were de facto officers. This is so because in the statements allegedly made by District Attorney O'Sullivan, she did not deny appointing defendants to prosecute the criminal action against Miller and the Mine. Her purported efforts to distance herself from the CDAA lawyers she appointed as deputy district attorneys to prosecute the criminal action do not deprive defendants of their status as de facto officers.

The undisputed, competent evidence discloses that District Attorney O'Sullivan was legally authorized to appoint defendants as deputy district attorneys (Gov. Code, § 24101), knowingly did so, and simply failed to comply with the condition precedent of filing a written appointment (Gov. Code, § 24102). Therefore, defendants were de facto deputy district attorneys as a matter of law, and their prosecution of plaintiffs was not illegal conduct

---

[4] The Mine relies on Miller's declarations containing purported hearsay statements by District Attorney O'Sullivan that "CDAA came to her with a completed investigation proposing to file criminal charges"; that "she knew nothing about the issue, wanted nothing to do with the issue and saw no crime," but that defendants "forced their way into Sierra County"; that she was not participating in the case; that Miller's concerns about the case were between him and CDAA; and that because she had not been reelected to another term, "she was leaving as soon as she gets another job." The Mine also relies on comments that O'Sullivan purportedly made to the editor of the local newspaper, The Mountain Messenger, to the effect that the editor would "have to ask the [CDAA] lawyer" about the felony charges because O'Sullivan knew nothing about them.

The Mine is wrong in claiming that O'Sullivan's statements are admissible as authorized admissions, i.e., statements offered against a party that were made by a person authorized by the party to make a statement for the party concerning the subject matter of the statement. (Evid. Code, § 1222.) There is no evidence that O'Sullivan was defendants' agent or that they authorized her to speak on their behalf. (See Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1995 ed.) foll. § 1222, p. 159.)

for purposes of the protection afforded by the anti-SLAPP statute. (*Flatley, supra*, 39 Cal.4th at pp. 325, 330, 333.)[5]

## II

Also incorrect is the Mine's contention that defendants failed to meet their burden of demonstrating that the complaint arose from constitutionally protected conduct or speech. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494] ["[I]t is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute"].)

According to the Mine, the "principle thrust of plaintiffs' complaint is that the CDAA defendants illegally cloaked themselves in the power and authority of the government to bring unwarranted criminal charges against plaintiffs"; that is, defendants "took over a portion of the government, and misused the government's prosecutorial powers to initiate and pursue criminal charges against plaintiffs." We are not persuaded.

The complaint was based on defendants' filing of the criminal action against plaintiffs and the presentation of evidence before the grand jury. Plaintiffs simply sought to avoid the bar of prosecutorial immunity by implying that defendants were acting unlawfully because a written appointment was not filed. Hence, the complaint arose from statements or writings that defendants made in official proceedings or in connection with issues under consideration or review by judicial bodies or proceedings, and from conduct in furtherance of the exercise of the right of petition in connection with a public issue.

Such statements and conduct were within the scope of section 425.16, subdivision (e). (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830] [the constitutional right to petition includes filing litigation or otherwise seeking administrative action, and

---

[5] The Mine asks us to take judicial notice of documents concerning the underlying mine accident that killed Fussell, which documents disclose that the penalties against plaintiffs were reduced by various agencies. Whether plaintiffs were ultimately sanctioned for violating mining safety laws does not affect whether defendants were de facto district attorneys entitled to prosecutorial immunity. Accordingly, the materials are irrelevant to the dispositive issues raised by the appeal, and the request for judicial notice is denied. (*Citizens to Save California v. California Fair Political Practices Com.* (2006) 145 Cal.App.4th 736, 740, fn. 2 [52 Cal.Rptr.3d 17].)

communications preparatory to or in anticipation of bringing an action or other official proceeding are within the protection of section 425.16]; accord, *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564] [filing a complaint and prosecuting a small claims court action is protected under section 425.16].)

### III

We next conclude that the trial court erred in ruling that even if defendants were acting as de facto deputy district attorneys, "it is highly questionable" that de facto officers are entitled to the immunity afforded by Government Code section 821.6.

"A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." (Gov. Code, § 821.6.) This immunity applies to a public prosecutor. (*Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1209–1210 [34 Cal.Rptr.2d 319].) "The office of public prosecutor is one which must be administered with courage and independence. Yet how can this be if the prosecutor is made subject to suit by those whom he accuses and fails to convict? To allow this would open the way for unlimited harassment and embarrassment of the most conscientious officials by those who would profit thereby. There would be involved in every case the possible consequences of a failure to obtain a conviction. There would always be a question of possible civil action in case the prosecutor saw fit to move dismissal of the case. . . . The apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office. The work of the prosecutor would thus be impeded and we would have moved away from the desired objective of stricter and fairer law enforcement." (*Pearson v. Reed* (1935) 6 Cal.App.2d 277, 287 [44 P.2d 592]; accord, *Imbler v. Pachtman* (1976) 424 U.S. 409, 423–424 [47 L.Ed.2d 128, 139–140, 96 S.Ct. 984].)

The immunity is absolute, applying even if the prosecutor "acts maliciously and without probable cause" (Gov. Code, § 821.6; see *Falls v. Superior Court* (1996) 42 Cal.App.4th 1031, 1042–1044 [49 Cal.Rptr.2d 908]), such as by concealing exculpatory evidence (*Randle v. City and County of San Francisco* (1986) 186 Cal.App.3d 449, 453, 457, fn. 9 [230 Cal.Rptr. 901]). While absolute immunity is necessary for the public policy reasons stated here, the unfortunate but necessary side effect is that an unscrupulous prosecutor's misconduct goes unpunished in terms of civil liability. " 'It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not

connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.' " (*Hardy v. Vial* (1957) 48 Cal.2d 577, 582–583 [311 P.2d 494], quoting *Gregoire v. Biddle* (2d Cir. 1949) 177 F.2d 579, 581.)

The Mine, relying on a 1936 law review article, contends that absolute prosecutorial immunity does not apply to de facto officers. The article states: "While the acts of an officer de facto are valid insofar as the rights of the public are involved, or the rights of third persons having an interest in them are concerned, *yet if a party defends or sues in his own right as a public officer for his protection or benefit, it is not sufficient that he be merely an officer de facto; he must be an officer de jure*. That is, when the incumbent is sued for the commission of an act which is criminally or civilly enforceable against the 'officer' as such, a defense of de facto status will not be heard, since an 'officer' in this capacity includes de facto as well as de jure officers. *And when the incumbent is sued for doing an act normally excusable in a de jure officer, the de facto officer can not put up the defense of the immunity of the office, for this defense belongs exclusively to the de jure officer.*" (Jarrett, *De Facto Public Officers: The Validity of Their Acts And Their Rights To Compensation* (1936) 9 So.Ca.L.Rev. 189, 220, italics added.) We disagree.

Not only is this law review passage based on antiquated 19th century cases, from other jurisdictions, that do not have binding value as precedent,[6]

---

[6] The law review article cites *Miller v. Callaway* (1878) 32 Ark. 666 (constable acting under a mere color of title to the office may be liable in an action against him for trespass to person or property) and *Patterson v. Miller* (1859) 59 Ky. 493 (a person constitutionally ineligible for the office of sheriff, who must have known that his title to the office was not legal, and who, under color of title, seizes and sells property on execution is liable in trespass).

the law appears to have changed since the mid-1800's. (Cf. *Charleston v. Pate* (Tex.Ct.App. 2006) 194 S.W.3d 89, 91 [de facto assistant district attorney was entitled to prosecutorial immunity]; *Sank v. Poole* (1992) 231 Ill.App.3d 780 [596 N.E.2d 1198, 1201, 173 Ill.Dec. 319] [de facto police officer was entitled to governmental immunity]; *White by Swafford v. Gerbitz* (6th Cir. 1989) 892 F.2d 457, 462 [judge, whose appointment was procedurally defective, was entitled to absolute judicial immunity as a de facto special city court judge]; *Barr v. Abrams* (2d Cir. 1987) 810 F.2d 358, 361 [prosecutor was entitled to absolute immunity unless he or she had proceeded "in the clear absence of all jurisdiction" or "without any colorable claim of authority"].)

Defendants, and the Attorney General of California as amicus curiae, persuasively assert—and we agree—that public policy requires that a de facto deputy district attorney operating under a colorable claim of authority must be afforded the same absolute immunity as provided to a de jure officer. "Under California law the immunity statute is given an 'expansive interpretation' in order to best further the rationale of the immunity, that is, to allow the free exercise of the prosecutor's discretion and protect public officers from harassment in the performance of their duties." (*Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1292 [89 Cal.Rptr.2d 60].) This rationale applies equally to de facto deputy district attorneys.

Persons appointed as deputy district attorneys must be free to vigorously enforce the law without concerns over the possibility of subsequent damage claims against them. Such concerns will weigh heavily if the appointees can be deprived of prosecutorial immunity based solely on a technical deficiency in their appointment process, particularly where the deficiency is not of their own making as in this case. If immunity is not assured, district attorneys seeking to appoint temporary deputies to assist with a transitory increase in the workload or a prosecution in a specialized area of the law, will have difficulty finding anyone willing to take the gamble. The effect on the administration of justice will be profound, particularly in small counties with limited budgets.

Indeed, depriving a de facto deputy district attorney of absolute immunity would be inconsistent with the rule of law that the acts of a de facto official while in the performance of the duties of his or her office are valid with regard to the public and have the same legal effect as those of an officer de jure. (*Ryder v. United States, supra*, 515 U.S. at p. 180 [132 L.Ed.2d at p. 142]; *People v. Cradlebaugh, supra*, 24 Cal.App. at p. 492.) While a quo warranto action may be brought to remove an official who is holding office unlawfully (see *Town of Susanville v. Long* (1904) 144 Cal. 362, 365 [77 P. 987]), the validity of the official's actions may not be attacked collaterally.

(*Marine Forests Society v. California Coastal Com., supra*, 36 Cal.4th at p. 56.) Denying prosecutorial immunity to defendants would be, in effect, the same as permitting plaintiffs to pursue an impermissible collateral attack on the validity of defendants' actions in prosecuting the criminal action.

For all the reasons stated above, where a person appointed as a deputy district attorney acts under color of authority and is performing the same function as would a de jure deputy district attorney, the person is entitled to prosecutorial immunity even if his or her appointment was irregular, thereby making the person a de facto, rather than de jure, deputy district attorney.

### IV

We also reject the Mine's contention that defendants are not entitled to prosecutorial immunity because Government Code section 821.6 applies only to a "public employee" and, under the terms of the contract between CDAA and California's Department of Industrial Relations, defendants are not public employees.

Under the contract, CDAA provides professional services to the department by assisting district attorneys in rural counties to investigate and prosecute criminal violations of the Labor Code. It states: "[E]lected District Attorneys will, as appropriate, deputize these attorneys and investigator to handle criminal and civil investigations and prosecutions within the respective participating counties. [CDAA] will employ the Circuit Prosecutors and Investigator, but participating District Attorneys Offices will provide administrative support." "No District Attorney shall be required to use any Circuit Prosecutor or Circuit Investigator. The Circuit Prosecutors and Investigator shall be employed and supervised by [CDAA]. Participating District Attorneys will provide offices and administrative support, and will retain charging, filing, and settling authority within each county."

That the contract provides that the deputized lawyers are CDAA employees, i.e., compensated by CDAA, does not mean they are not public employees within the meaning of Government Code section 821.6. For purposes of the immunity statute, a "public employee" is "an employee of a public entity." (Gov. Code, § 811.4.) The term " '[e]mployee' includes an officer, judicial officer . . . , employee, or servant, *whether or not compensated*, but does not include an independent contractor." (Gov. Code, § 810.2, italics added).) Defendant attorneys were not independent contractors with respect to the Sierra County District Attorney, who "retain[ed] charging, filing, and settling authority within each county." And the fact they were employees of CDAA does not preclude them from being uncompensated

public employees, servants, or officers within the meaning of Government Code section 810.2 and the immunity statute. In fact, the contract states that defendants would "act[] on behalf of a District Attorney," which they did after District Attorney O'Sullivan appointed them. They swore an oath to uphold the Constitution of the State of California—an oath required of all public officers (Cal. Const., art. XX, § 3; Gov. Code, § 1360)—and they assumed the responsibility and duties of prosecuting the criminal action against Miller and the Mine as deputy district attorneys. That they were acting as if they were de jure prosecutors is illustrated by the undisputed fact that O'Sullivan asked defendant Hedum to conduct the preliminary hearing in a child molestation case, and he complied.

In sum, although defendant attorneys were employees of CDAA, which paid their salary, they were uncompensated public officers or public servants of the Sierra County District Attorney's Office (Gov. Code, § 810.2) and, therefore, were entitled to the absolute immunity granted by Government Code section 821.6.

This immunity applies to every cause of action alleged in plaintiffs' complaint, because all arose out of the individual defendants' charging decisions and prosecution of the criminal action against Miller and the Mine. (*Falls v. Superior Court, supra*, 42 Cal.App.4th at pp. 1045–1046 [a prosecutor's duties involve actions preliminary to the initiation of a prosecution, as well as actions outside the courtroom, and are entitled to absolute immunity]; *Amylou R. v. County of Riverside, supra*, 28 Cal.App.4th at p. 1211 [immunity applies to conduct that is incidental to the investigation and prosecution of crimes]; *Kayfetz v. State of California* (1984) 156 Cal.App.3d 491, 497 [203 Cal.Rptr. 33] [immunity is not limited to suits for malicious prosecution]; *Jenkins v. County of Orange* (1989) 212 Cal.App.3d 278, 284 [260 Cal.Rptr. 645] [weighing and presenting evidence are prosecutorial functions so the immunity applies to an alleged failure to consider all of the evidence and the misrepresentation of evidence to the court]; *Johnson v. City of Pacifica* (1970) 4 Cal.App.3d 82, 84–88 [84 Cal.Rptr. 246] [immunity applies to alleged negligent investigation of a crime].)

Because the individual defendants are immune from liability, CDAA cannot be held vicariously liable for their actions. (*Lathrop v. HealthCare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1423–1424 [8 Cal.Rptr.3d 668] [employer cannot be held liable if employee is not liable as any substantive defense that is available to the employee inures to the benefit of the employer]; cf. *American Arbitration Assn. v. Superior Court* (1992) 8 Cal.App.4th 1131, 1133 [10 Cal.Rptr.2d 899] [a refusal to extend arbitrator immunity to the sponsoring organization would make the arbitrator's immunity illusory as it would shift liability rather than extinguishing it].)

## V

As we have explained, when they prosecuted the criminal action against Miller and the Mine, the individual lawyer defendants were de facto deputy district attorneys engaged in activity protected by the anti-SLAPP statute, and were entitled to absolute immunity for their actions in the criminal prosecution.[7] And since the individual defendants were immune from liability, CDAA could not be vicariously liable for their actions. Consequently, plaintiffs cannot prevail in their civil lawsuit against defendants, seeking damages for malicious prosecution and related causes of action. Therefore, the trial court erred in denying defendants' anti-SLAPP motion. The court should have stricken the complaint, dismissed the action, and considered defendants' entitlement to attorney fees. (§ 425.16, subds. (b)(1), (c).)

One further matter requires our attention.

In a footnote in its respondent's brief, the Mine states: "Although defendants named Mr. Miller as a party to this appeal, defendants did not file a motion to strike Mr. Miller's claims, and there has been no order granting or denying an anti-SLAPP motion with respect to Mr. Miller." It provides no citation to the record or legal analysis in support of its assertion, which appears to be contradicted by the proofs of service indicating that Miller was served with the motion to strike, the order denying the motion, and defendants' notice of appeal. Miller, who appeared at the hearing on the motion to strike, has not notified this court that he is not a proper party on appeal, nor has he sought to have the appeal dismissed as to him. In fact, Miller filed a stipulation in this court regarding an extension of time for appellate briefing. We later advised him that his respondent's brief was overdue and, if it was not on file by a certain date, the appeal would be submitted based on the record and defendants' opening brief, absent a showing of good cause for relief. Miller did not respond.

Due to the absence of any analysis, relevant legal authority, and citations to the material facts in the record to support a contrary conclusion, we find that Miller is a proper party on appeal. (See *Taylor v. Roseville Toyota, Inc.* (2006) 138 Cal.App.4th 994, 1001, fn. 2 [42 Cal.Rptr.3d 68]; *Marvin Lieblein, Inc. v. Shewry* (2006) 137 Cal.App.4th 700, 708, fn. 2 [40 Cal.Rptr.3d 547]; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [85 Cal.Rptr.2d 521].)

---

[7] In light of this conclusion, we need not address whether defendants' conduct was covered by the litigation privilege. (Civ. Code, § 47.)

## DISPOSITION

The order denying defendants' anti-SLAPP motion is reversed, and the matter is remanded to the trial court with directions to strike plaintiffs' complaint, dismiss the action, and consider defendants' entitlement to attorney fees. (§ 425.16, subds. (b)(1), (c).) Plaintiffs shall reimburse defendants for their costs on appeal. (Cal. Rules of Court, rule 8.276(a)(1).)

Morrison, J., and Robie, J., concurred.

A petition for a rehearing was denied May 30, 2007, and respondents' petition for review by the Supreme Court was denied August 8, 2007, S153654.