Filed 7/10/15  Lopez v. Green CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EMILIANO LOPEZ,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>LISA GREEN et al.,<br><br>    Defendants and Respondents. | F069010<br><br>(Super. Ct. No. S-1500-CV-280591)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

Emiliano Lopez, in pro. per., for Plaintiff and Appellant.

Theresa A. Goldner, County Counsel, and Andrew C. Thomson, Deputy County Counsel, for Defendants and Respondents.

-ooOoo-

This is an appeal from a judgment of dismissal of the Superior Court of Kern County entered on an order granting a special motion to strike under Code of Civil Procedure section 425.16,[1] also known as the anti-SLAPP statute. (See at p. 6 & fn. 6, *post*.) We conclude the court properly granted this motion and affirm the judgment.

## BACKGROUND

Plaintiff/appellant Emiliano Lopez, an inmate, sued defendants/respondents Lisa Green, Michael Yraceburn, and the County of Kern for breach of contract, fraud, defamation, and intentional infliction of emotional distress. He specifically accused Yraceburn, a supervising district attorney, of (1) reneging on a conditional plea agreement; (2) concealing and falsely misrepresenting the material facts of the agreement; (3) publishing false and unprivileged statements; and (4) causing "the loss of society and companionship with his estranged daughter … and his family …." Lopez further alleged Green, the district attorney, and the County of Kern were vicariously liable under the doctrine of respondeat superior.

In his civil complaint, Lopez claimed he agreed to plead "to gross vehicular manslaughter while intoxicated" in an earlier criminal case "on the condition that he be paroled at the completion of the minimum term of imprisonment …."[2] John Ramirez, a deputy district attorney, "confirmed the deal in open [c]ourt" on April 15, 2005, and Judge Lee Felice "approved the plea deal on May 12, 2005[,] pursuant to Penal Code section … 1192.5." Lopez quoted a portion of a reporter's transcript detailing the "April 15[th] plea colloquy":

> "[The Court] Mr. Lopez is present in a wheelchair, represented by Mr. Halper[n], People are represented by Mr. Ramirez. This is the time and

---

[1]     Unless otherwise indicated, subsequent statutory citations refer to the Code of Civil Procedure.

[2]     The appellate record does not specify whether Lopez pleaded guilty or nolo contendere.

2.

place set for the entry of a plea negotiated in Department 1 by Judge Felice…

"10.  [The Court]  Mr. Lopez, you understand what the maximum is on the case?

"11.  [Lopez]  Yes.

"12.  [The Court]  You also understand that the maximum sentence, and in fact the sentence, there's no minimum to it as such or maximum, on this particular, it is 15 years to life, that's what['s] getting imposed do you understand that?

"13.  [Lopez]  Yes.

"14.  [Halpern]  Your Honor, it[']s a murder conviction, 15 years to life, with no conduct[.]  This is 15 to life with-on parole at 50 percent minimum.

"15.  [Ramirez]  That's correct.

"16.  [The Court]  You understand that, Mr. Lopez?

"17.  [Lopez]  Yes….

"18.  [The Court]  After you get out of prison, you would be on state parole … do you understand that?

"19.  [Lopez]  Yes, sir.

"20.  [The Court]  I'm not going to be the one who imposes sentence or who approves the deal.  That's going to be done by Judge Felice, back down in [D]epartment 1, [d]o you understand that?

"21.  [Lopez]  I understand….  [¶] … [¶]

"23.  [The Court]  The conditional plea you are entering today is not binding on Judge Felice when he sentences you.  Once you [t]ake this deal today, you're locked in, but he's not.  If after reviewing it, he decides this is an inappropriate deal to make, he can withdraw his approval of it.  If he does that, however, you can go back to a not-guilty plea and fight the case.  Do you understand that?

"24.  [Lopez]  I understand…."[3]

Lopez also specified in his complaint that Green and Yraceburn sent a letter opposing his parole to the prison's "Lifer Desk" on March 23, 2011.  The letter inaccurately read:  "'[Lopez] and his brother decided they needed more alcohol ….  After purchasing what they had come for, they were headed back to the party house.'"[4]  On July 26, 2011, at Lopez's parole hearing, Yraceburn identified Lopez's crime as murder, stated Lopez "'was going to a 7-Eleven store where he had purchased more alcohol to continue consumption'" at or around the time of the offense, and recommended "'a maximum term of reconsideration for parole ….'"[5]  Thereafter, parole was denied.  The commissioner told Lopez:

> "'The District Attorney said you were making a beer run.  This crime was carried out in a manner which demonstrates exceptional[ly] callous disregard for human suffering.'"  (See *ante*, fn. 5.)

In response, defendants filed an anti-SLAPP motion on November 14, 2013.  They claimed Yraceburn's acts in connection with Lopez's parole determination constituted "protected speech" and were "statutorily allowable," "absolutely privileged," and/or "immunized."  (Boldface and capitalization omitted.)  In an accompanying declaration under penalty of perjury, Yraceburn averred, inter alia:

> "6.     In his civil Complaint, Lopez alleges that I made statements to the Parole Board which he believes were false since the statements were 'not entertained during the Court plea bargain proceedings.'

> "7.     … My review of the portion of the transcribed plea agreement hearing which was incorporated in Mr. Lopez's Complaint substantiates that the foregoing is consistent with what occurred during the plea agreement hearing in Mr. Lopez's criminal matter.

---

**3**     This reporter's transcript is not in the record.

**4**     This letter is not in the record.

**5**     Lopez quoted "Board Transcripts," which are not in the record.

4.

"8.     On or about March 23, 2011, prior to Mr. Lopez's parole hearing, on behalf of the Kern County District Attorney's Office[,] I prepared a letter to the Parole Board setting forth my understanding of the facts of Mr. Lopez's case.  The incorporated facts were based upon material in the District Attorney Office file on Case No. BF107410A, including witness statements/interviews and the police investigation materials.  I am informed and believe that the matters stated in the letter were true and correct.

"9.     On or about July 26, 2011, at Mr. Lopez's parole hearing, I spoke to the Parole Board setting forth my understanding of the facts of Mr. Lopez's case.  As with the letter, the discussed facts were based upon material in the District Attorney Office file on Case No. BF107410A, including witness statements/interviews and the police investigation materials.  I am informed and believe that the matters stated in my discussion with the Parole Board were true and correct."

A hearing on defendants' anti-SLAPP motion was originally scheduled for December 16, 2013, but was continued to January 15, 2014, after the court granted Lopez's request for an extension on account of his limited legal research opportunities and typing-induced hand pain.  On January 8, 2014, Lopez filed a "Request for A Stay of Breach of Contract Action."  (Some capitalization omitted.)  He attached a January 2, 2014, memorandum from the prison principal notifying inmates that computers in each facility library would "no longer be available" as of January 6, 2014, due to "the process of transferring the inmate law access computer systems from Premis to Lexis-Nexis."  Because this transition would "require an undetermined amount of time to complete," "[e]very inmate needing legal information w[ould] be required to forward a request … to the librarian [between 8:00 a.m. and 11:00 a.m.] so that research can be completed[] by the librarian on the staff computer, and returned to the requesting inmate the following day."

At the January 15, 2014, hearing, the court addressed Lopez's stay request and the anti-SLAPP motion:

"The court is not granting any further extensions of time with regard to the [section] 425.16 motion.  The motion is a creature of statute, it has to

be filed within a particular time from this case coming into our system. That was timely filed. It was noticed for an appropriate hearing date, that is the court is to conduct hearing within 30 days of the motion. That date was continued at the request of the plaintiff needing additional time …, … granted for a period of time to this date, essentially one month, and there's no good cause for further continuance of the hearing. And there's a statutory mandate for purposes of these types of motions being disposed of at the earliest opportunity.

"The court's tentative on the motion is to grant the motion to strike … and that is pursuant to … [s]ection 425.16, … without leave to amend…. [¶] … [¶]

"… [T]he motion's been around since mid November. [Lopez] had a request, we continued in December. Everything that [Lopez] describ[ed] appears to have come up as of late and there's no good explanation for lack of timely response of papers by the deadline. So the court's going to grant the motion…."

The court entered an order granting the anti-SLAPP motion on January 29, 2014.

## DISCUSSION

### I. Overview of the anti-SLAPP statute.

Section 425.16, "commonly referred to as the anti-SLAPP[6] statute" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 312), "allows a court to strike any cause of action that arises from the defendant's exercise of his or her constitutionally protected rights of free speech or petition for redress of grievances" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 311-312). "In determining whether to grant a special motion to strike an alleged SLAPP, the trial court engages in a two-step process. First, the court determines whether the challenged cause of action arises from a protected activity as described in [section 425.16, subdivision (e)].… Second, if the court so finds,

---

**6** A strategic lawsuit against public participation, also known as SLAPP, is "'nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue.' [Citation.]" (*Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1542-1543; see § 425.16, subd. (a).)

it then decides whether the plaintiff has established a probability of prevailing on the merits of the claim." (*Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1075, 1084, citing *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

"In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) "'It is recognized, with the requirement that the court consider the pleadings and affidavits of the parties, the test is similar to the standard applied to evidentiary showings in summary judgment motions … and requires that the showing be made by competent admissible evidence within the personal knowledge of the declarant…. Averments on information and belief are insufficient…. As in a motion for summary judgment, the pleadings frame the issues to be decided.' [Citation.]" (*Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 236.) However, "[a] special motion to strike differs significantly from a motion for summary judgment in one procedural aspect. In order to establish a prima facie case for summary judgment, a moving party defendant must present admissible evidence establishing a complete defense to the claim or that plaintiff will be unable to prove an essential element of the claim…. In order to trigger a response from a plaintiff in a special motion to strike, a moving defendant need only demonstrate that the action arises out of protected First Amendment activity." (*Barak v. The Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 661, citations omitted.)

## II. Standard of review.

"We review de novo the trial court's ruling on an anti-SLAPP motion." (*La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 469.) "Thus, we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim."

7.

(*Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation*, *supra*, 158 Cal.App.4th at p. 1084.)

### III. Defendants established Lopez's causes of action arose from protected activity.

"The moving party has the initial burden of establishing that the [cause of] action challenged qualifies for treatment under section 425.16" (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1188 (*Mattel*)), i.e., "[the] cause of action … aris[es] from any act of th[e] [defendant] in furtherance of the [defendant]'s right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" (§ 425.16, subd. (b)(1)). A defendant satisfies this burden by demonstrating (1) "the plaintiff's cause of action itself was *based on* [the defendant's] act" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78); and (2) "'the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)[7]'" (*ibid.*). "To determine whether defendant has met its burden we must look at the 'gravamen of the lawsuit.' [Citation.]" (*Rivera v. First DataBank, Inc.* (2010) 187 Cal.App.4th 709, 715.)

---

**7**      Subdivision (e) of section 425.16 provides:

"[An] 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Here, each of Lopez's claims was based on Yraceburn's verbal and written communications regarding Lopez's potential release. Defendants correctly pointed out in their anti-SLAPP motion that these communications, which were made before and during Lopez's July 26, 2011, parole hearing, constituted protected speech. Subdivision (e) of section 425.16 covers any writing or oral statement made before an executive proceeding or in connection with an issue under consideration or review by an executive body. (See *ante*, fn. 7.) "The executive branch has 'inherent and primary authority' over parole matters. [Citation.] Within that branch, the Board [of Parole Hearings] is an 'executive parole agency' that is an 'arm of the Department of Corrections [and Rehabilitation].' [Citations.]" (*In re Roberts* (2005) 36 Cal.4th 575, 588; see Gov. Code, §§ 12838, 12838.4, 12838.5.) "By its nature, the determination whether a prisoner should be released on parole is generally regarded as an executive branch decision. [Citations.] The decision, and the discretion implicit in it, are expressly committed to the executive branch. [Citations.]" (*In re Morrall* (2002) 102 Cal.App.4th 280, 287; see Cal. Const., art. V, § 8; Pen. Code, §§ 3040 et seq., 5075 et seq.) Hence, we find defendants made the requisite threshold showing.

## IV.    Lopez did not establish a probability of prevailing on the merits of his claims.

"When the moving party establishes that the action qualifies for treatment under section 425.16, the burden shifts to the plaintiff to demonstrate the 'probability that the plaintiff will prevail on the claim.'" (*Mattel*, *supra*, 99 Cal.App.4th at p. 1188, quoting § 425.16, subd. (b)(1).) "If the plaintiff meets its burden the motion must be denied." (*Mattel*, *supra*, at p. 1189.)

"In order to establish a probability of prevailing on a cause of action in the context of an anti-SLAPP motion, a plaintiff must state and substantiate a legally sufficient claim." (*La Jolla Group II v. Bruce*, *supra*, 211 Cal.App.4th at p. 470.) "'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if

9.

the evidence submitted by the plaintiff is credited." [Citations.]' [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) In addition, "a plaintiff must overcome [a substantive defense] to demonstrate a probability of prevailing." (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 323.) "We consider 'the pleadings, and supporting and opposing affidavits … upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

  a. *Breach-of-contract claim.*

"A plea bargain is a negotiated agreement between the prosecution and the defendant by which a defendant pleads guilty to one or more charges in return for dismissal of one or more other charges." (*People v. Martin* (2010) 51 Cal.4th 75, 79.) "'Judicial approval is an essential condition precedent to the effectiveness of the "bargain" worked out by the defense and prosecution.'" (*People v. Segura* (2008) 44 Cal.4th 921, 930.) "Acceptance of the agreement binds the court and the parties to the agreement" (*ibid.*) and "the defendant's sentence must be within the negotiated terms" (*People v. Martin*, *supra*, at p. 79). "A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles." (*People v. Shelton* (2006) 37 Cal.4th 759, 767.)

In his complaint, Lopez alleged he and Ramirez negotiated a plea agreement conditioned on a release following completion of the minimum term of imprisonment, a fact defendants appeared to concede in their anti-SLAPP motion.[8] Lopez then alleged

---

[8] The agreement was alleged by Lopez to be reflected in his attorney's statement that, "This is 15 to life with-on parole at 50 percent minimum," and the prosecutor's response, "That's correct." In their motion, defendants acknowledged Lopez's allegation

Judge Felice approved the agreement on May 12, 2005. However, Lopez did not provide any evidence substantiating this element. (Cf. *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 474-475 [plaintiff failed to establish a likelihood of prevailing on a breach-of-contract claim because he did not produce evidence demonstrating formation].) "[A] plaintiff cannot rely on his pleading at all, even if verified, to demonstrate a probability of success on the merits." (*Id.* at p. 474.) Instead, "proof must be made upon competent admissible evidence." (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1017; see *Hecimovich v. Encinal School Parent Teacher Organization*, *supra*, at p. 474, fn. 8 ["'The anti-SLAPP statute should be interpreted to allow the court to consider the "pleadings" in *determining the nature of the "cause of action"*—i.e., whether the anti-SLAPP statute applies. But affidavits stating evidentiary facts should be required to oppose the motion (because pleadings are supposed to allege ultimate facts, not evidentiary facts).'"].) Absent such proof, we find Lopez did not satisfy his burden with respect to his breach-of-contract claim.[9]

   b. *Fraud, defamation, and intentional infliction of emotional distress claims.*

   Under the Government Claims Act (Gov. Code, § 810 et seq.), "a public employee[10] is not liable for an injury resulting from his act or omission where the act or

---

of such a conditional agreement, but disingenuously omitted the relevant quotes from their version of the "plea colloquy." Additionally, defendants did not deny the alleged agreement occurred; they, instead, argued they were not a party to the plea agreement, the People they represented were.

[9]   Lopez contends in his opening brief that the trial court should have stayed the cause of action in view of his limited personal access to the prison's computer system and legal research database as of January 6, 2014. We decline to address this argument because it is not listed under a separate heading or subheading as required by California Rules of Court, rule 8.204(a)(1)(B). (See, e.g., *Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282, 314, fn. 24; *Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 542.)

[10]   "'Public employee' means an employee of a public entity." (Gov. Code, § 811.4.) "'Public entity' includes the state, … county, city, district, public authority, public

11.

omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused" (*id.*, § 820.2). Government Code section 820.2 "confers immunity … to those 'basic policy decisions' which have been committed to coordinate branches of government" (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 793), including parole determinations (*Johnson v. State of California* (1968) 69 Cal.2d 782, 795). Furthermore, Government Code section 845.8, subdivision (a), expressly provides: "Neither a public entity nor a public employee is liable for: [¶] … [a]ny injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release." (See *Johnson v. State of California*, *supra*, at p. 795, fn. 9; see also *Leyva v. Nielsen* (2000) 83 Cal.App.4th 1061, 1066 [specific immunity set forth under Gov. Code, § 845.8, subd. (a), is part of Gov. Code, § 820.2's general discretionary immunity].)

Here, in his undisputed capacity as a supervising deputy district attorney (see, e.g, *Miller v. Filter* (2007) 150 Cal.App.4th 652, 666; *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1436; *Johnson v. City of Pacifica* (1970) 4 Cal.App.3d 82, 85-86 [prosecuting attorneys are public employees]), Yraceburn made verbal and written communications regarding Lopez's prospective parole (see Cal. Code Regs., tit. 15, § 2030, subds. (a)(3) ["A representative of the district attorney of the county from which a life prisoner was committed may participate in any parole consideration or rescission hearing for that prisoner."] & (d)(2) ["The role of the prosecutor [at parole hearings] is to comment on the facts of the case and present an opinion about the appropriate disposition."]). Thus, he was entitled to absolute immunity and the remaining defendants

agency, and any other political subdivision or public corporation in the State." (*Id.*, § 811.2.)

12.

could not be held vicariously liable.  As a matter of law, Lopez could not overcome this substantive defense to establish a probability of prevailing on his tort claims.[11]

## DISPOSITION

The judgment of the superior court is affirmed.  Costs on appeal are awarded to defendants.

_____
DETJEN, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
POOCHIGIAN, J.

---

[11]     Given our disposition, we need not address defendants' alternative contention that Lopez cannot challenge the validity of his plea agreement through a civil lawsuit.

13.